UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY TYRONE SHANNON,

      Plaintiff,             CIVIL ACTION NO. 16-cv-12963

      v.                           DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gregory Tyrone Shannon seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I. RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on July 25, 2013, alleging that he has been disabled since March 6, 2013, due to heart failure, epileptic seizures, pancreatitis, leg problems, high blood pressure, shortness of breath, and chronic fatigue. (TR 22, 93.) The Social Security Administration denied Plaintiff's claims on September 24, 2013, and Plaintiff requested a *de novo* hearing. (TR 92, 100–101, 114–15.) On January 21, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Patrick J. MacLean. (TR 35–82.) In an April 20, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 29–30.) The Appeals Council declined to review the ALJ's decision (TR 1–6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 11 at 9–14), and the ALJ (TR 24–25, 27–28) each set out a factual summary of Plaintiff's medical record and the hearing testimony. Defendant adopts the ALJ's recitation of the facts. (Docket no. 17 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018; that Plaintiff had not engaged in substantial gainful activity since March 6, 2013; and that Plaintiff suffered from the following severe impairments: chronic heart failure, emphysema, hypertension, a history of pancreatitis, a history of occasional seizures, and alcohol abuse. (TR 24.) The ALJ also found that Plaintiff had a non-severe arthritic impairment. (*Id.*) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 25–26.) The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), but he can only occasionally stoop, balance, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and cannot be exposed to moving machinery or unprotected heights, and is limited to simple, routine, repetitive tasks.

(TR 26.) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 29–30.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from March 6, 2013, through the date of the ALJ's decision. (TR 30.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but

less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)  Plaintiff was not presently engaged in substantial gainful employment; and

(2)  Plaintiff suffered from a severe impairment; and

(3)  the impairment met or was medically equal to a "listed impairment;" or

(4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits, or in the alternative for further proceedings, because (1) the ALJ failed to obtain an updated consultative exam following the addition of new medical evidence into the administrative record; (2) the ALJ failed to order a psychological exam, "despite evidence of an existing mental impairment"; (3) the ALJ "failed to comply with SSR 96-8p by failing to include the required function-by-function assessment in his RFC finding; and (4) the ALJ "failed to consider the effect of Plaintiff's fatigue and other non-severe impairments in his RFC finding." (Docket no. 11 at 7.)

### 1. SSR 96-6p, updated medical opinion

Social Security Ruling 96-6p states that an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3–4. But in order for the ALJ's decision to be considered erroneous based upon a failure to seek an updated medical opinion, Plaintiff has to show that the additional evidence does, in fact, call for an updated opinion. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009); *see also Courter v. Comm'r of Soc. Sec.*, 479 Fed. App'x 713, 723–24 (6th Cir. 2012).

In reliance on this provision of SSR 96-6p, Plaintiff argues that the ALJ erred because a number of new medical records were added to the administrative record after the consultative examiner, Bina Shaw, M.D., examined Plaintiff and produced a report on September 6, 2013, and after the State agency physician, Muhammad Ahmed, M.D., reviewed Plaintiff's medical records and submitted his report on September 24, 2013. (Docket no. 11 at 17–20.) Both

6

doctors opined that Plaintiff was capable of at least light work; the ALJ assigned "significant weight" to Dr. Shaw's opinion and "some weight" to Dr. Ahmed's. (*See* TR 28; 98–99; 367.)

Plaintiff recites various findings from the more recent records, some admittedly serious, but Plaintiff fails to identify the relevant Listing he believes these records establish or even to generally explain how these records show that Plaintiff's conditions meet or medically equal a Listing. In that sense, Plaintiff fails to establish that the new evidence calls for an updated opinion. Moreover, it is clear from the ALJ's decision that he considered these records, but he did not find that they called for an updated opinion:

> In May 2014, in Exhibit 8F, the claimant denied any real chest pain. In January, 2015, the claimant stated that he is walking normally (Ex. 11F). Also, at that time, he denied any musculoskeletal, gastrointestinal, or psychological symptoms (Ex. 11F, page four).
>
> . . . .
>
> Again, a stress test in December, 2014 showed a much improved ejection fraction of 40 percent (Ex. 11F). An echocardiogram at that time showed a similar ejection fraction of 40.32 percent (Ex. 11F). One report at that time states that the claimant's ejection fraction is 45 percent (Ex. 12F). Thus, the claimant's ejection fraction is much improved since March, 2013 when it was 15–20 percent (Ex. 8F). There was an exacerbation of congestive heart failure in June, 2013 (Ex. 8F), but that is the last reported exacerbation. A chest x-ray in January, 2014 showed only minimal vascular congestion (Ex. 5F). Exhibit 5F further states that there is no edema. In May, 2014, there was no edema, and heart and lung sounds were normal (Ex. 8F). In September, 2014, heart and lung sounds were again normal (Ex. 10F). At that time, the claimant actually denied any cardiovascular symptoms (Ex. 10F). In October, 2014, Exhibit 10F again indicated normal heart and lung sounds and no edema. Findings in December, 2014 include no edema and only mild cardiomegaly (Ex. 12F).

(TR 27–28.) The ALJ further found in his Step 2 analysis that the record did not establish "persistent symptoms of heart failure which very seriously limit the claimant's ability to initiate, sustain, or complete activities of daily living, or three or more episodes of congestive heart failure within a 12-month period with evidence of fluid retention from clinical and imaging

7

assessments at the time of the episodes." (TR 25.) Although the ALJ did not expressly state that the more recent records did not call for an updated opinion, it is clear from this discussion that he implicitly concluded they did not. Moreover, Plaintiff did not ask for an updated medical opinion during the hearing, despite the fact that Plaintiff's counsel and the ALJ discussed the fact that Plaintiff would be submitting more recent evidence. (TR 72.)

Additionally, perhaps the most severe findings are contained within the records of Plaintiff's June 2013 hospitalization. And, contrary to Plaintiff's assertion, these records *were* available to the consultative examiner and the State agency physician. The State agency physician discussed them at length in the Disability Determination Explanation (TR 96), and the consultative examiner also addresses these records (TR 365). The fact that the State agency physician and the consultative examiner had these hospital records (in addition to other relevant medical records), prior to issuing their reports distinguishes this case from the only case Plaintiff relies on in his brief, *Manus v. Commissioner of Social Security*, No. C-1-08-243, 2009 WL 2983051 (S.D. Ohio Sept. 11, 2009) (state agency medical consultants had no records from treating mental health professionals at the time of their review). The undersigned also notes that this case is not binding authority.

For these reasons, the undersigned finds the ALJ did not violate SSR 96-6p in deciding not to request an updated medical evaluation. Plaintiff's Motion should be denied in this regard.

### 2. 42 U.S.C. § 421, mental health evaluation

Plaintiff next argues that the ALJ erred in failing to "obtain a psychological or psychiatric consultative evaluation in light of evidence indicating the existence of a mental impairment." (Docket no. 11 at 20.) Section 421(h) of the Social Security Act provides, in relevant part:

> An initial determination [concerning disability] shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure—

8

> (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional assessment[.]

42 U.S.C. § 421(h)(1). The Sixth Circuit has clarified that the obligation to consult with mental health experts arises "only 'if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment.'" *Marcum v. Comm'r of Soc. Sec.*, No. 98-6771, 2000 WL 92262, at *4 (6th Cir. 2000) (table decision) (quoting *Owen v. Chater, Comm'r of Soc. Sec.*, No. 96-5571, 1997 WL 251918, at *4 (6th Cir. 1997)). In *Marcum*, the Sixth Circuit found that a "single report to [a treating physician] of some depression and reports of nonrestorative sleep," the fact that the claimant was prescribed an anti-depressant, and the claimant's testimony that he can't work because he "stay[s] depressed a lot" was insufficient to trigger the ALJ's obligation to seek out a mental health evaluation. *Id.*

Plaintiff argues that he presented sufficient evidence to raise an inference that he suffers from depression.[1] (Docket no. 11 at 20–22.) Plaintiff claims that he testified "to having fatigue, drowsiness, lack of energy, and insomnia, all of which are consistent with a diagnosis of depression," but doesn't provide any citations to the hearing transcript. (Docket no. 11 at 21–22.) The undersigned has reviewed the transcript, and, while Plaintiff did testify that he is "always fatigued" (TR 42), he also testified that he can take care of all of his personal needs on his own (TR 60), and that he performs a number of fairly strenuous activities, like working to repair a family home (owned by his brother) at least once a month (TR 44–45, 64–65), and

---

[1] Plaintiff does not rely upon his well-documented alcoholism in making this argument, and therefore has waived any such argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and internal quotation marks omitted)).

walking to and from the grocery store (TR 70.) He further testified that he has trouble sleeping at night because of "the conditions" in the boarding house where he resides, specifically, "[p]eople always running in and out of the house." (TR 59–60.) Moreover, Plaintiff testified that although he has told his doctors that he feels depressed, they have never prescribed any medication nor referred him for any mental health treatment. (TR 62.)

Plaintiff also points out that when he was treated at Henry Ford Health System in January 2014, he "was noted to have multiple depressive symptoms including sleep disturbance, depressed mood, tearfulness, helplessness, hopelessness, apathy, worthlessness, guilt and decreased motivation." (Docket no. 11 at 21.) It is true that Mark Ketterer, PhD, noted some of these serious issues as part of a "routine health psych consult for cardiology" in January 2014. (TR 448.) However, the "chief complaint" noted at the time was "substance abuse." (TR 448.) Although Dr. Ketterer noted moderate anxiety and depression, the only "stressors" he identified were "financial, substance abuse." (TR 450.) Moreover, despite the voluminous medical records submitted by Plaintiff, he fails to cite to any other instances where his alleged depression is discussed or even mentioned. Indeed, the ALJ cites a January 2015 medical record in which Plaintiff denied having any psychological symptoms. (TR 27; 772.)

Finally, the case Plaintiff relies on in support of this argument, *Blabac v. Commissioner of Social Security*, No. 3:08-cv-849, 2009 WL 5167650 (N.D.N.Y. Dec. 18, 2009), is distinguishable. In that case, there was substantially more evidence indicating the need for a mental health evaluation, including a prior consultative exam wherein the claimant was *diagnosed* with depression, social phobia, and "the beginnings of agoraphobia." *Id.* at *4. There was also testimony at the administrative hearing that the claimant had "cognitive issues" as evidence by the fact that he frequently repeated himself "over and over." *Id.* at *5. Moreover,

the claimant was proceeding *pro se*, and the court emphasized a "heightened" duty on the part of the ALJ to develop the record. *Id.* at *7. Finally, the case, an unreported case from 2009 decided in the Northern District of New York, is not binding on this Court.

The undersigned finds that the ALJ did not err by declining to request a mental health evaluation before determining that Plaintiff is not disabled. Plaintiff's Motion should be denied in this regard.

### 3. *SSR 96-8p, function-by-function analysis*

Plaintiff asserts that the ALJ failed to conduct a proper function-by-function analysis of Plaintiff's physical impairments in the assessment of Plaintiff's RFC, in violation of SSR 96-8p. (Docket no. 11 at 22–23.) Specifically, Plaintiff argues that the ALJ erroneously failed to discuss the "medical evidence and findings concerning Plaintiff's abilities to lift, carry, push and pull." (*Id.* at 23.) SSR 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. SSR 96-8p, 1996 WL 374184, at *3. SSR 96-8p also provides that the ALJ must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. *Id.* at *7.

Plaintiff relies on non-binding precedent from the Western District of New York, *Hogan v. Astrue*, 491 F. Supp. 2d 347 (W.D.N.Y. 2007), to support her assertion that the ALJ erred by failing to specifically discuss Plaintiff's ability to lift, carry, push and pull. (Docket no. 11 at 22–23.) However, as Defendant points out, Sixth Circuit precedent clearly establishes that "'[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.'" *Johnson v. Comm'r of Soc. Sec.*, No. 14-cv-

14713, 2015 WL 12670490, at *10 (E.D. Mich. Sept. 18, 2015) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 547(6th Cir. 2002)).

Moreover, the ALJ did indeed explicitly discuss Dr. Shaw's opinion that Plaintiff "can lift at least 20 pounds without difficulty," assigning that opinion "significant weight." (TR 28.) Dr. Ahmed, whose opinion the ALJ gave "some weight," opined that Plaintiff has no limitations with regard to pushing and pulling, and that Plaintiff can occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds. (TR 28; 98–100.) The ALJ also specifically noted the fact that, in his Adult Function Report, Plaintiff wrote that he could lift approximately 130 pounds over his head. (TR 27, 278.) These portions of the ALJ's decision contradict Plaintiff's argument that the ALJ erroneously failed to discuss the evidence and how it relates to Plaintiff's ability to lift, carry, push and pull. Thus, Plaintiff's argument fails, and his Motion should be denied in this regard.

### 4. *The ALJ's treatment of Plaintiff's fatigue*

Last, Plaintiff argues that the ALJ "violated SSR 96-8p by failing to consider the effect of [Plaintiff's] fatigue on his ability to work." (Docket no. 11 at 24–25.) Specifically, Plaintiff argues that "[m]edical documentation from both Henry Ford Health System and DMC documents Plaintiff's extreme fatigue and shortness of breath as a result of his chronic heart failure. However, nowhere in the ALJ's decision does the ALJ address Plaintiff's fatigue and shortness of breath and how it would affect his RFC." (*Id.* at 25.) SSR 96-8p does indeed require ALJs to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5.

The ALJ acknowledged Plaintiff's allegation that he is disabled due to "shortness of breath, chest pain, and fatigue." (TR 24.) However, an ALJ is obligated to determine the RFC

12

based on the evidence he finds credible; in this case, the ALJ did not find Plaintiff's allegations to be credible, particularly in light of the "fairly strenuous work" Plaintiff performs working with his brother on a family home, and the fact that Plaintiff testified that he goes up and down the stairs to his apartment "about 10 times a day." (TR 27, 29.) In other words, the ALJ essentially found that Plaintiff's alleged shortness of breath and fatigue did not even constitute non-severe impairments.

Plaintiff is correct that there is some evidence in the record supporting his allegations of fatigue and shortness of breath. (*See, e.g.*, TR 437 (noting shortness of breath on 1/19/2014 at Henry Ford Health System); TR 42 (Plaintiff's testimony that he is "always tired").) However, Dr. Ahmed was aware of Plaintiff's complaints of fatigue and shortness of breath, and he did not assign any functional limitations as a result. (*See* TR 95–96; 98–99.) And, when Dr. Shaw examined Plaintiff, she noted that Plaintiff no longer had shortness of breath, and she does not mention any fatigue. (TR 365–67.) She also opined that Plaintiff could "sit, stand and walk for eight hours a day," "bend at least 40 degrees and lift at least 20 pounds without difficulty," and "squat occasionally." (TR 367.) Moreover, Defendant cites a number of medical records in which Plaintiff denied experiencing either shortness of breath or fatigue. (*See* docket no. 17 at 24 (citing, *inter alia*, TR 378, 437, 628, 654, 683, 743).) Plaintiff also does not challenge the ALJ's decision to discount his credibility.

Plaintiff simply fails to meet his burden of establishing that his alleged fatigue or shortness of breath actually limit him beyond the RFC formulated by the ALJ. The ALJ's decision not to assign functional limitations based on these alleged conditions is supported by substantial evidence. Plaintiff's Motion should be denied in this regard.

VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 11) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 23, 2017        s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

   I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 23, 2017   s/Leanne Hosking
               Case Manager Generalist